In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Charles R. KOEHN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Charles R. KOEHN,
Respondent.

Supreme Court

*No. 2005AP2034-D.—Decided May 19, 2006.*

2006 WI 50

(Also reported in 714 N.W.2d 148.)

¶ 1. PER CURIAM. We review the recommendation of the referee that Attorney Charles R. Koehn's

license to practice law in Wisconsin be revoked for professional misconduct. That misconduct involves multiple rules violations with respect to 19 clients, as well as practicing law on at least ten occasions while his license was suspended for nonpayment of mandatory state bar dues. The referee also recommended that Attorney Koehn be required to pay restitution and the costs of these proceedings, which are $2959.58 as of February 6, 2006. We determine that the seriousness of Attorney Koehn's professional misconduct warrants revocation of his license to practice law in Wisconsin.

¶ 2. Attorney Koehn was admitted to practice law in Wisconsin in 1977 and practiced in Green Bay. He has been subject to four previous instances of discipline. In 1991 he was privately reprimanded for failing to adequately consult with and represent a client. In 1997 his license was suspended for 60 days as a result of his failure to represent and advise his client, his misrepresentation to the court, to a prosecutor and a client, his failure to act with reasonable diligence, and his failure to refund fees. *See In re Disciplinary Proceedings Against Koehn,* 208 Wis. 2d 128, 559 N.W.2d 908 (1997). In 2000 Koehn was publicly reprimanded for failing to respond to a court order and file a jurisdictional statement and brief, failing to respond to client inquiries, and an incompetent handling of an appeal. Koehn's license was temporarily suspended in 2005 for failing to cooperate with the Office of Lawyer Regulation (OLR) investigations involving seven matters. Due to his continuing failure to cooperate with the OLR, his license remains temporarily suspended.

¶ 3. In August 2005 the OLR filed a 61–count complaint against Attorney Koehn. Personal service of the initial complaint was obtained on September 9, 2005. In October 2005 an amended complaint alleging

30 more counts was filed. Konrad Tuchscherer was appointed referee. He determined that the OLR had made diligent efforts to serve the amended complaint, and further determined that in November 2005 service was accomplished by mailing. Attorney Koehn did not file an answer, or make any appearance despite adequate notice and multiple opportunities to respond.

¶ 4. In December 2005 a telephonic default motion hearing was held. The OLR appeared and Attorney Koehn did not. The OLR advised that three sets of motion papers were mailed to Attorney Koehn on December 9, 2005, and only the set addressed to his now vacated office was returned by the U.S. Postal Service. The referee granted the OLR's motion for default judgment. The referee issued his report containing findings of fact and conclusions of law with respect to 19 clients, as well as Attorney Koehn's practicing of law while his license was suspended for nonpayment of mandatory bar dues.

¶ 5. Many of the rules violations alleged in the OLR's complaint arose from Attorney Koehn accepting retainer fees from clients, having little or no contact with them, failing to provide the necessary legal services and then refusing to refund any part of the unearned retainer fees. Because Attorney Koehn did not contest the complaint's allegations or challenge the referee's findings, we deem it unnecessary to belabor this opinion with the details regarding his numerous instances of misconduct. Therefore, rather than reciting the extensive facts found in the referee's 357 paragraph report regarding the 19 clients and 91 counts, this opinion limits its discussion to one client matter as an example of the misconduct described in the referee's report. It is sufficient to note that the referee's findings

demonstrate Attorney Koehn's flagrant and widespread infractions of rules of professional conduct.

¶ 6.   Consistent with the complaint's allegations, the referee found that in March 2004 D.R. hired Attorney Koehn to represent his son, E.R., who resided out of state and was under police investigation for a possible homicide-related charge. Attorney Koehn had previously told D.R., in a different matter, that because the assistant district attorney was Attorney Koehn's brother-in-law, Attorney Koehn could obtain a favorable result. D.R. obtained a favorable result in the previous matter and believed it was due to Attorney Koehn's claimed familial connections. Therefore, D.R.'s belief that Attorney Koehn had "pull" with the authorities led him to hire Attorney Koehn to represent his son.

¶ 7.   D.R. paid Attorney Koehn a retainer of $8000 in the form of a cashier's check that Attorney Koehn cashed approximately two weeks later. Attorney Koehn did not deposit any of the funds into his client trust account. There was no retainer agreement and Attorney Koehn did not explain the basis or rate of the fee, nor did he state whether E.R. would be charged at an hourly rate for his representation.

¶ 8.   D.R. and his wife had two brief meetings with Attorney Koehn about E.R.'s legal matters. During the first meeting in March 2004 Attorney Koehn called the district attorney's office to advise that he was representing E.R. Attorney Koehn then told D.R. that he would go to the out-of-state location to speak with E.R. and to have E.R. sign representation papers. Attorney Koehn told D.R. that it was good that E.R. had left the state and that he should not come back. Other than having

one other brief meeting with D.R. and his wife, Attorney Koehn performed no work on E.R.'s matter and never contacted him.

¶ 9. D.R. called Attorney Koehn's office several times to learn what was happening in his son's case but never received a response. In July 2004 D.R. finally got through to Attorney Koehn and asked him to return the retainer fee because Attorney Koehn had not done what he said he would do. Attorney Koehn responded that E.R. still needed Attorney Koehn's representation. When D.R. said that he would ask the district attorney about the matter himself, Attorney Koehn threatened to tell the authorities exactly where his son was.

¶ 10. Thereafter, D.R. called Attorney Koehn's office many more times to request a refund but never received a response. In February 2005 D.R. asked the sheriff about the investigation concerning his son and was told that no charges were going to be brought due to lack of evidence.

¶ 11. Previously, in October 2004 D.R. had learned that his other son, A.R., who was on probation, was facing a possible one-year probation extension. D.R. had decided to ask Attorney Koehn to earn some of the $8000 already paid by representing A.R. concerning the probation matter. Attorney Koehn said that he would represent A.R. for $2000 and subtract that amount from the $8000 already paid for E.R.'s matters.

¶ 12. In December 2004 a petition to extend A.R.'s probation was filed and D.R. delivered a copy of the petition to Attorney Koehn's office. When Attorney Koehn read the petition and saw who the prosecutor was, he told D.R., "[a]t least they put it in the right hands, I'm having Christmas dinner with [him]." Additionally, Attorney Koehn told D.R. that the prosecutor's brother, a judge, was also his brother-in-law, and that

Attorney Koehn was "connected." However, neither the prosecutor nor the judge was Attorney Koehn's brother-in-law.

¶ 13. Attorney Koehn never met with A.R. after their initial conference in October 2004 despite repeated unsuccessful attempts by D.R. to contact Attorney Koehn to discuss the case. The motion to extend A.R.'s probation was scheduled for a hearing in February 2005. D.R. took letters of recommendation and other supporting documents for A.R. to Attorney Koehn's office prior to the scheduled hearing date. Attorney Koehn did not appear at the February 4 hearing. When the district attorney called Attorney Koehn, Attorney Koehn stated he was in court on another matter. The court allowed Attorney Koehn to appear by telephone. Attorney Koehn, however, never told A.R. that he would be unable to attend the hearing personally.

¶ 14. The court granted the motion to extend A.R.'s probation for one year. A.R. did not get a chance to testify as he had hoped, nor have the court review the supporting documents, which were in Attorney Koehn's possession.

¶ 15. Subsequently, A.R. terminated Attorney Koehn's representation and requested the court reconsider his probation request. The court granted A.R.'s request and after a new hearing in March 2005, at which A.R. represented himself, the court approved a proposal to change A.R.'s probation extension from one year to six months.

¶ 16. In January 2005 D.R. had been served with a petition for a temporary restraining order and an injunction. D.R. decided to ask Attorney Koehn to earn some of the $8000 already paid by having Attorney Koehn represent him in the restraining order matter.

Attorney Koehn entered an appearance in the matter but did not consult with D.R. or prepare D.R. for the hearing. Attorney Koehn went to the hearing unprepared and with none of the relevant paperwork. The court granted the injunction.

¶ 17. In February 2005 D.R. send Attorney Koehn a letter stating that Attorney Koehn was discharged as the attorney for all matters concerning his family and requesting a refund of the $8000. Attorney Koehn did not respond to the request and has not refunded any portion of the $8000 paid.

¶ 18. In March 2005 the OLR mailed a letter regarding D.R.'s grievance to Attorney Koehn's office and informed him that he was required to provide a written response by April 22, 2005. Attorney Koehn failed to respond. On April 22, 2005, the OLR staff mailed a letter by both certified and first-class mail to Attorney Koehn reminding him of his duty to cooperate with the grievance investigation and of the consequences for failing to do so. Attorney Koehn did not respond.

¶ 19. Based on these facts, the referee determined that Attorney Koehn was in violation of numerous rules as alleged in the complaint. The referee determined that Attorney Koehn failed to act with reasonable diligence, failed to respond to reasonable requests for information, failed to adequately communicate the basis or rate of a fee, failed to hold the property of his clients in trust, and represented a client when the representation may have been materially limited by his own pecuniary interest.

¶ 20. In addition, the referee found that by telling his client that he was the brother-in-law of an assistant district attorney and a judge, Attorney Koehn engaged

in dishonesty, fraud or deceit. By stating that he had the ability to receive favorable treatment for his clients as a result of his claimed familial relationship, he stated or implied an ability to improperly influence a government official. In addition, Attorney Koehn failed to take steps to protect his client's interest upon termination of representation, including the refunding of an unearned fee. Also, by failing to respond to the OLR, Attorney Koehn failed to fully and fairly disclose all facts pertaining to the alleged misconduct.

¶ 21. In numerous other client matters, the referee determined that Attorney Koehn engaged in similar acts of misconduct. Consistent with the allegations of the 91–count amended complaint, the referee found violations with respect to the 19 clients as follows:

- *Practicing law while suspended;* contrary to SCR 10:03(6)[1] (2 counts); SCR 20:8.4(f)[2] (34 counts).

- *Failing to fully and fairly disclose facts regarding misconduct;* contrary to SCR 22.03(2)[3] (12 counts); SCR 20:8.4(f).

---

[1] SCR 10:03(6) provides:   Membership.

(6) Penalty for nonpayment of dues. If the annual dues or assessments of any member remain unpaid 120 days after the payment is due, the membership of the member may be suspended in the manner provided in the bylaws; and no person whose membership is so suspended for nonpayment of dues or assessments may practice law during the period of the suspension.

[2] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[3] SCR 22.03(2) provides:   Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires

467

- *Failing to take steps to protect client interests upon termination of representation, including refunding unearned fees;* contrary to SCR 20:1.16(d)[4] (15 counts).

- *Misrepresentations to the OLR;* contrary to SCR 22.03(6)[5] (8 counts); SCR 20:8.4(f).

- *Willful failure to cooperate with OLR investigation;* contrary to SCR 22.03(2) and (6) (5 counts); SCR 20:8.4(f).

- *Failure to act with reasonable diligence;* contrary to SCR 20:1.3[6] (13 counts).

---

otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[4] SCR 20:1.16(d) provides:   Declining or terminating representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[5] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[6] SCR 20:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

468

- *Failure to keep client reasonably informed and respond to reasonable requests for information;* contrary to SCR 20:1.4(a)[7] (13 counts).

- *Failure to consult with client and abide by client's decisions;* contrary to SCR 20:1.2(a)[8] (2 counts).

- *Failure to hold property of clients in trust;* contrary to former SCR 20:1.15(a), effective through June 2004 and, contrary now to SCR 20:1.15(b)(4)[9] (2 counts).

- *False statement to a tribunal;* contrary to SCR 20:3.3(a)(1)[10] (2 counts).

- *Failure to explain to permit client to make informed decision;* contrary to SCR 20.1.4(b)[11] (1 count).

---

[7] SCR 20:1.4(a) states that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[8] SCR 20:1.2(a) provides: Scope of representation.

> (a) A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[9] SCR 20:1.15(b)(4) states that "[u]nearned fees and advanced payments of fees shall be held in trust until earned by the lawyer . . . . Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

[10] SCR 20:3.3(a)(1) states that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal."

[11] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

- *Failure to provide competent representation;* contrary to SCR 20:1.1[12] (1 count).

- *Failure to notify client, courts and parties' attorneys of suspension for nonpayment of dues;* contrary to SCR 22.26(1)(a), (b), and (c)[13] (3 counts); SCR 20:8.4(f).

- *Offensive personality;* contrary to SCR 40.15[14] (1 count); SCR 20.8.4(g) (1 count).

---

[12] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[13] SCR 22.26(1) provides in relevant part: Activities following suspension or revocation.

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

[14] SCR 40.15, the attorney's oath, states in relevant part that an attorney "will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party . . . ."

470

■■■■■■■■■■

- *Failure to communicate basis or rate of fee;* contrary to SCR 20.1.5(b)[15] (3 counts).

- *Representation of client when representation may have been materially limited by pecuniary interest;* contrary to SCR 20:1.7(b)[16] (1 count).

- *Dishonesty, fraud, deceit;* contrary to SCR 20:8.4(c)[17] (2 counts).

- *Stated or implied ability to improperly influence government official;* contrary to SCR 20:8.4(d)[18] (1 count).

- *Failure to cooperate with district committee investigation;* contrary to SCR 22.04(1)[19] (4 counts); SCR 20.8.4(f).

¶ 22.   The referee determined that the Wisconsin Lawyers' Fund for Client Protection (Fund) approved the applications and issued payment for many clients

---

[15] SCR 20:1.5(b) states that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

[16] SCR 20:1.7(b) provides that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests."

[17] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[18] SCR 20:8.4(d) provides that it is professional misconduct for a lawyer to "state or imply an ability to influence improperly a government agency or official."

[19] SCR 22.04(1) states that "[t]he director may refer a matter to a district committee for assistance in the investigation. A respondent has the duty to cooperate . . . in respect to the district committee. The committee may subpoena and compel the production of documents . . . ."

whose matters were the basis of the amended complaint's allegations. The Fund reported making numerous payments due to Attorney Koehn's dishonesty. The total of sums paid related to client matters within this disciplinary proceeding came to $29,582.50.

¶ 23. In addition, the OLR brought three client matters to the referee's attention because it appeared to the OLR that Attorney Koehn owed restitution. These three client matters were included in the amended complaint but had not been included on the payment list provided by the Fund. They included payment to three clients: K.W. in the amount of $984, K.K. in the amount of $800, and R.A. in the amount of $1500. The referee determined that Attorney Koehn's conduct in these client matters violated numerous supreme court rules. The referee recommended that Attorney Koehn's license be revoked, that he pay the costs of these proceedings, and that he be ordered to pay restitution to the Fund and to the three clients.

¶ 24. We adopt the findings of fact and conclusions of law set forth in the referee's report and the referee's recommendation. Attorney Koehn's extensive and egregious rules violations, in 91 counts with respect to 19 client matters, along with his practicing law while his license was suspended for nonpayment of mandatory state bar dues, warrant the revocation of his license.

¶ 25. IT IS ORDERED that the license of Charles R. Koehn to practice law in Wisconsin is revoked, effective the date of this opinion.

¶ 26. IT IS FURTHER ORDERED that Attorney Koehn comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin is revoked.

472

¶ 27. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Koehn shall pay restitution of $29,582.50 to the Wisconsin Lawyers' Fund for Client Protection, $984 to K.W., $800 to K.K., and $1500 to R.A., the clients identified in the referee's report.

¶ 28. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Koehn pay to the Office of Lawyer Regulation the cost of this proceeding.

¶ 29. IT IS FURTHER ORDERED that restitution to the three clients identified above and the Wisconsin Lawyers' Fund for Client Protection shall be paid prior to paying costs to the Office of Lawyer Regulation.